## McCormick Harvesting Machine Co. v. Andrew Haug and Martin Haug.

1. CONTRACTS—*Successive Acts to be Done by the Parties.*—Where successive acts are to be done by the parties to a contract, the inclination of the courts of the present day is to construe them to be dependent promises, so that neither party can sue the other unless he himself is ready to perform.

**Assumpsit**, on contract. Appeal from the Circuit Court of Jasper County; the Hon. TRUMAN E. AMES, Judge, presiding. Heard in this court at the August term, 1899. Affirmed. Opinion filed March 16, 1900.

**Statement.**—This suit was begun by appellant against appellees, before a justice of the peace of Jasper county, and was appealed to the Circuit Court of that county, where a trial was had before a jury, which found a verdict for the defendants, on which judgment was rendered, and plaintiff has appealed.

The action grew out of an alleged breach of an agreement between the parties by which appellant appointed appellees its exclusive agents to sell its harvesting machines and other machinery within certain territory for certain commissions on the sales, and appellees agreed to sell to good and responsible men only.

A clause of the agreement on which the action is brought is as follows:

" It is further agreed in case the said McCormick Harvesting Machine Company or their authorized agent find that any note taken and passed upon at settlement was doubtful or worthless at the time of the sale, then the said agent shall take the said note and replace it with cash, or notes secured by good and responsible parties, that shall be

acceptable by the said company or their authorized general agent."

The method of making sales, was to canvass the territory and take orders for machines, and to forward the orders to the Harvesting Machine Company at its office in Chicago, who would ship them to its agents, and the agents would deliver them to the purchasers, and assist in setting them up ready for use.

Appellees having contracted to sell to D. C. McCoy and J. L. Hargus, a harvesting machine, they thereupon executed and delivered to them an order for it as follows:

" McCormick Harvesting Machine Company will ship for the undersigned, on or about June 2, 1896, one of their latest improved binder carrier and truck, including the usual extras, consigned to the care of A. Haug & Son, at Hunt City, Ill., the undersigned agreeing on the delivery of the machine to execute approved notes for the sum of $40, payable on the first day of September, 1896; $40 payable on the first day of September, 1897; $45 payable on the first day of September, 1898, with interest thereon at the rate of six per cent per annum from September 1, 1896, until due, and interest at the rate of seven per cent per annum from maturity until paid, the machines to be warranted as per the following warranty, without addition or erasure, a copy of which I have this day received.

This machine is warranted to be well made, of good material and durable, with proper care. If upon one day's trial the machine should not work well, the purchaser shall give immediate notice to the McCormick Harvesting Machine Company or their agent, and allow time to send a person to put it in order. If it can not then be made to work well, the purchaser shall return it at once to the agent of whom he received it, and all cash and notes received in settlement will be refunded. Continuous use of the machine or use at intervals throughout the harvest season, or failure to notify the McCormick Harvesting Machine Company or their agent, or to return the machine as agreed, shall be deemed an acceptance of the machine by the undersigned.

D. C. McCoy,<br/>J. L. Hargus."

Appellant shipped the machine to appellees, who delivered it to Hargus and McCoy, and they gave their notes to appellant according to the terms of the order.

Aside from a written admission of Hargus and McCoy, which is hereinafter referred to, the undisputed evidence shows, that immediately on receiving the machine and attempting to use it, it was found to be defectively constructed, and would not properly elevate or bind the grain, but scattered much of it through the field. The purchasers at once notified appellees of the difficulty, and they, under instructions from appellant, got Hargus and McCoy to keep the machine until an agent of the company should come and fix it so it would run and do good work; and appellees immediately notified the general agent of the company, who replied he would be there in a day or two. A week having elapsed, appellees notified him again by telegraph, and after a further delay of several days, he came, and was informed of the trouble with the machine and that it would not work, and he directed Hargus and McCoy to cut out a portion of the machine and keep the pieces, which they declined to do, insisting that as he was sent there to do it he should put it in condition to do good work. Pending the conversation, it began to rain, and the agent insisted that he was in a hurry to go to another place, and asked Hargus and McCoy to sign a paper as follows—

" P. O. HUNT CITY, County Jasper, State Illinois.

Dated the 12th day of June, 1896.

McCORMICK HARVESTING MACHINE COMPANY,

Chicago, Ill.

GENTLEMEN: Your expert, Mr. J. J. Freeark, called this day and adjusted and operated to my entire satisfaction, the McCormick Twine Binding Harvester, which I bought of your agents, A. Haug & Son, at Hunt City.

D. C. McCoy,

J. L. HARGUS"—

telling them to go ahead and fix up the machine. That the McCormick people were not the kind of people to send out a machine that would not work, and if they could not make it work, the company would take back the machine at any time and turn over the notes; also telling them the object of the paper was to show to the company, so that he could draw his salary. Neither Hargus nor McCoy read the paper, or knew its contents, but supposing they were accom-

modating him, signed it. Appellant having done nothing further to make the machine work, and McCoy and Hargus being unable to make it work, soon afterward returned the machine to appellees.

When the first note of McCoy and Hargus fell due, appellant brought suit on it before a justice of the peace and recovered judgment by default and afterward had the machine levied upon, and the constable sold it for $27.50. McCoy and Hargus each scheduled their property to the constable, but neither included the machine in his schedule and the schedules showed the personal property of each to be less than $400.

Appellees had no notice of the suit against McCoy and Hargus.

Gibson & Johnson, attorneys for appellant.

P. G. Bradbury, attorney for appellees.

Mr. Justice Bigelow delivered the opinion of the court.

As appellant's counsel say in opening their argument that they will not attempt to discuss in detail each error assigned, we shall content ourselves by following their example.

The correctness of each and all of appellees' instructions given to the jury is challenged.

The first instruction is as follows:

" The court instructs the jury that if the contract introduced in evidence in this case shows that in case the said McCormick Harvesting Machine Company, or their authorized general agent, find that any note taken and passed upon is doubtful and worthless at the time of the sale, then the said agents, Haug & Son, shall take the said note and replace it with cash, or note secured by good and responsible parties, that shall be acceptable by said company or their general agent, then it was the duty of the plaintiff in this case to return the notes of Hargus and McCoy or offer to return them before they brought suit against these defendants."

The principal ground of objection to it is, that it did not

tell the jury to whom the notes should have been returned. The attention of the jury is first called to the contract between appellant and appellees, which was in evidence before them, and it does not seem possible that the jury could have understood that if appellees were to pay appellant for the notes of Hargus and McCoy, that the notes were to be delivered to any person other than those who were to pay for them.

The delivery of the notes of Hargus and McCoy by appellant to appellees, and the payment for them in one of the ways provided in the contract, were dependant acts, to be simultaneously performed by each party.

The giving of the instruction was not error.

The second instruction, which is claimed to be more misleading than any other, is as follows:

"The court instructs the jury that if you believe from the evidence that the defendants, as agents of the plaintiff, sold to Hargus and McCoy, a binder, and that the said binder was guaranteed by the plaintiff to do the work for which it was manufactured, and that the same was defective, and that by reason of said defect, and of failure of plaintiff to fulfill its warranty, that the said McCoy and Hargus refused to pay for the same, and within a reasonable time after discovering said defect, they returned the said binder to the plaintiff's agents, then and in that case you should find for the defendants."

The objection to this instruction is, that there is nothing in the contract between appellant and appellees, and in the facts and circumstances in evidence, to justify the giving of it, and especially that there was no evidence before the jury that the warranty had been broken.

If this latter assumption were true in fact, there would be little need for a discussion of the instruction; but, aside from the paper that McCoy and Hargus signed, at the request of the agent, Freeark, the evidence is nearly all to the effect that the machine was not at all what it was warranted to be; that appellant's agent, who was sent to put it in condition to run properly, substantially admitted the machine to be defective, and did nothing to cure the defect.

It is impossible to read the evidence, in connection with the paper the agent Freeark secured, without coming to the conclusion that McCoy and Hargus were tricked into signing it, and their subsequent act in returning the machine, is strong evidence that they were deceived, but honest men.

The instruction was properly given.

The third instruction, to which objection is made, is as follows:

" The court instructs the jury that in construing the contract introduced in evidence in this case, the jury must take into consideration the entire contract, including the instructions on the back of the said contract, relating to any of the issues involved in this case."

It will readily be seen that (if the instruction has been correctly copied) the person who drew it used the word " construing," where the word " considering " was intended. We think the error, if it be one, is, in view of the other instructions given in the case, unimportant, and did appellant no harm.

We do not understand counsel as urging that the court erred in refusing some of appellant's instructions, nevertheless we have looked into all of them, and find that those given are more favorable to appellant than it had any right to expect, and that the court did not err in refusing those not given.

Appellant's counsel insist that the court erred in not sustaining appellant's motion for a new trial. What the reasons urged before the trial court for granting the motion were, we have no certain means of knowing, as none are given in the bill of exceptions, or elsewhere in the record. But since it is confidently insisted by counsel that the verdict is against both the law and the evidence, we will consider these as among the reasons urged below.

It is not denied that McCoy and Hargus were entitled, under the warranty, to a machine that would work well, but it is insisted that the conditions on which appellant was to receive back the machine and return the notes were not complied with by McCoy and Hargus. There is ample evi-

dence from which the jury were warranted in finding that when the machine was started it did not work well, nor did it do any better while McCoy and Hargus kept it, and in consequence they were compelled to forego doing work with it for others which they had contracted to do, and they retained it upon the agreement that appellant would send an expert agent to put it in order, and when, after long waiting, the agent came, he did absolutely nothing to the machine, although he substantially acknowledged it was defective.

The jury were warranted in inferring that the reason he did not put the machine in good running order was because he knew it could not be made to work well. McCoy and Hargus had a right to rely on this expert agent, and they returned the machine as he directed them to do. And the jury were also warranted in inferring from the action of appellant's agent, Freeark, that appellant had stepped in to carry out its part of the contract, and having failed, had, by directing McCoy and Hargus what to do with the machine, relieved appellees from any further liability in regard to the matter, and had taken the entire responsibility upon itself.

We are of the opinion that the verdict is against neither the law nor the evidence, and the judgment is affirmed.

After the opinion was filed in this case, counsel for appellant filed their petition for a rehearing, which was granted, and we have again carefully considered the conclusions which we before arrived at, and are satisfied that they are correct; hence the opinion as given above, with some slight modifications, will be refiled, with such additions as we deem necessary, to meet the suggestions in the petition and argument on the rehearing.

It is urged in the rehearing that when the defendants sold the machine to persons who were not good and responsible, they broke their contract, and that, for the breach, they became liable to pay for the machine.

We do not concur in this view of the case. The entire contract must be examined for the purpose of ascertaining

McCormick Harvesting Machine Co. v. Haug.

its true intent and meaning. It is nowhere stated in the contract that the mere fact of selling to persons not good and responsible, shall absolutely bind the defendants to pay for a machine so sold. On the contrary, it is provided that if the Harvester Machine Company find that any note taken upon any settlement was worthless at the time of the sale, then the agent shall take the note and replace it with cash or other notes. This was one of the steps prescribed by the contract to secure payment for a machine sold to persons not good and responsible. It is urged that this was a privilege merely to the defendants; but that can not be, for the reason that, when the company received the notes on settlement and found them worthless, then the agents were bound to "accept" them; but how could the agents "accept" them unless the notes were declared worthless by the company and brought to the agents for their acceptance ?

And furthermore, when the company found the notes to be worthless, a particular step to be taken is pointed out; and that step is neither a lawsuit against the purchasers of the machine, nor, in case the company fails to collect from the purchaser, is a further suit against the agents another step to be taken.

Before appellant sued McCoy and Hargus it knew the character of the notes, and from that knowledge, as we interpret the contract, it became the duty of appellant to declare the fact to the appellees, when they would be under obligation to accept such notes and turn out cash or good security for them. That the word "find" was not intended to be a discovery through the means of a lawsuit, is evidenced by the fact that when the "finding" has taken place it is the worthless notes that the agent shall accept. A worthless note, merged in a judgment, is not the thing to be "accepted," in accordance with the terms of the contract. The word "find" is used synonymously with the words "learn" or "discover."

As the court is of the opinion that on the merits of the controversy the judgment against appellant is right, the question involves the correctness of the second instruction given for the defendant.

To fully dispose of some of the views that have been urged in the argument for a rehearing, the following provision in the agreement between the parties should be stated as an additional fact, viz:

" You must give every purchaser one of our *printed warranties* with each machine that you sell, which will be a sufficient guarantee that the machine will work as represented; but if you fail to give the purchaser our printed warranty, showing just what the machine will do, you thereby forfeit our warranty to you."

This provision was printed as one of the directions on the back of the contract, and was expressly made a part of the contract.

No warranty from appellant to appellees, was, perhaps, contained in the agreement in express terms.

It is admitted in the argument for rehearing, that the warranty contained in the order signed by the purchasers, to the effect that the machine is " well made," entitled them to a machine that would work well. But the position taken is, first, that the printed warranty was not in fact delivered by the appellees to the purchasers, and therefore there was a forfeiture of "our warranty to you," and also that there was no warranty in fact to the purchasers; and secondly, that the warranty to the purchasers that the machine would do good work, was a warranty to them, and not to the appellees, thus admitting that there was a warranty in fact delivered, and that it had been broken.

As to the first position, the order quoted in full in the statement of facts has a recital, " a copy of which I have this day received." This order contains the warranty, and the purchasers needed no delivery of any further warranty, so far as they were concerned; and the recital was evidence from which the jury were authorized to find that the printed warranty had been in fact delivered by the appellees, in compliance with the directions.

As to the second position, this involves the construction of the clause, "you thereby forfeit our warranty to you." As heretofore stated, there was, perhaps, no warranty in terms contained in the agreement between the parties to

this record, unless it may be found in a clause of the contract that appellant, " agrees to use its best efforts to complete * * * all machines ordered."

Upon that matter we express no opinion, as the point has not been adverted to by counsel; but the words "our warranty to you," must have some meaning if the court can find one on rational grounds, as words should not be rejected, unless they are entirely meaningless.

Let the clause read as follows: "You thereby forfeit our (aforesaid printed) warranty (operative) to you (when you sell machines)," thereby incorporating so much of the order as is signed by the purchaser, containing a warranty, into the contract between the parties to this action. "Our warranty" was appellant's warranty of the machine, and when the agent delivered the printed warranty to the purchaser, it operated to the benefit of appellees. Under the contract, then, appellees had a warranty that they were handling machines that would work well, and the admission of the evidence tending to show that the machine was worthless, was proper.

Appellant's counsel urge, that if the machine would not cut McCoy and Hargus' grain, appellees would not have an action against appellant; and that if they could not use that fact as a ground of action, they could not use it as a ground of defense.

But no reason is perceived, if the contract has been properly interpreted, why appellees should be held responsible on their contract to pay for a machine that was worthless, any more than the purchasers who had a warranty should pay for it. Had appellant furnished a machine that fulfilled the warranty, then it would have done all it agreed to do; but it was itself in fault in the matter, when it turned out a worthless machine; and if it had wanted either the money or the return of the machine, it should have said so, in so many words. For obvious reasons this was not done.

Where successive acts are to be done by parties to a contract, the inclination of the courts of the present day is to construe them to be dependent promises, so that neither

party can sue the other unless himself ready to perform. Bishop on Contracts, sections 401–402; Anson on Contracts, pp. 288, 289, 290; 1 Beach on Contracts, section 89.

If it be admitted that appellees sold to persons not responsible, it is also shown that appellant furnished a worthless machine, when, as a first step of the undertaking, it ought to have furnished a machine that would have done good work. The consideration, as evidenced by this contract, for the promise of appellees to take up the notes, was the warranty of appellant, that it was furnishing a machine that would work well; so that, even if appellant had had the notes of the purchasers, and had offered them back to appellees, as provided in the contract, a sufficient reason for refusing to accept them, would have been, that the machine was worthless.

Complaint is made that in the settlement made between the parties, appellees got the sum of $25 for commission on the sale of the machine, when the agreement between the parties provided that no commissions should be charged on machines returned. This question was not litigated in the court below. There being no pleadings, we must look to the evidence and other portions of the record, to see what was litigated. The fact of the payment of these commissions was brought out in the testimony, just the same as any other evidentiary fact; no instructions were asked on the theory that part of the claim in dispute was the wrongful payment of these commissions. The entire record shows that the question really litigated was the alleged wrongful selling to persons who were not "good and responsible." An instruction ought to have been asked, at the least, to show that the claimed wrongful payment of commission was part of appellant's case. We can not reverse a case upon a point that was not litigated.

Adhering to the opinion heretofore given, it is refiled and the judgment is affirmed.